FILED

OCT 17 2006

CLERK
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re | ] Case No. 05-58969-ASW |
|---|---|
| Catalin Pora, | ] Chapter 13 |
| Debtor | ] |

MEMORANDUM DECISION
SUSTAINING OBJECTION TO CONFIRMATION OF PLAN

Before the Court is the Chapter 13 Trustee's *Amended Objection to Confirmation of Plan* ("Objection"). The debtor, Catalin Pora ("Debtor"), filed his Chapter 13 plan ("Plan") on October 15, 2005. The Chapter 13 Trustee ("Trustee") filed the Objection on January 17, 2006.

The Trustee in this case is Devin Derham-Burk. Cathleen Cooper Moran, Esq. of Moran Law Group, Inc., represents Debtor.

The Court held a hearing on the Objection on June 23, 2006, and took the matter under submission. The Court now makes the following findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.

STATEMENT OF FACTS

The relevant facts necessary to decide the issues are undisputed. The Debtor filed a voluntary Chapter 13 petition, along with the requisite schedules and the Plan on October 15, 2005. The Plan proposes payments of $90 per month for 36 months, resulting in total Plan receipts of $3,240. After payment of administrative claims and Trustee's fees, disbursements to general unsecured creditors under the Plan will be approximately $1,438.[1] Debtor has unsecured non-priority claims, excluding student loans, of $23,941.07. The proposed dividend to the these unsecured non-priority creditors is approximately 6%.

Debtor has student loan indebtedness of approximately $27,116.23. These are also unsecured non-priority debts. Debtor proposes to separately classify the student loans debts under 11 U.S.C. § 1322(b)(5)[2] and to pay these creditors outside of the Plan according to contract terms at a rate of approximately $293.06 per month. At this rate, the student loan creditors would receive a total of $10,550.06 over the term of the plan -- an amount equal to approximately 39%[3] of the total student loan balance.

If the student loans are classified together with the other non-priority unsecured debts, the total amount of non-priority

---

[1] This amount is subject to change depending upon the resolution of the amount of priority taxes owed to the IRS.

[2] Unless otherwise noted, all statutory references are to Title 11, United States Code (the Bankruptcy Code), as it existed when Debtor filed this bankruptcy petition on October 15, 2005.

[3] ($293.06*36 months) = ($10,550.06/$27,116.23)*100 = 39%

MEMORANDUM DECISION
SUSTAINING OBJECTION TO CONFIRMATION

2

unsecured debt would rise to $51,057.30.[4] If the proposed monthly payments on the student loans are added to the Plan payments, the total amount distributed to unsecured creditors would be approximately $11,986 ($10,550.06 + $1,438.00). Accordingly, the dividend to unsecured creditors would rise to approximately 23%.[5]

The Trustee objects to the Plan, alleging that the proposed treatment of the student loan debt unfairly discriminates against the other non-priority unsecured creditors in violation of § 1322(b)(1). Specifically, the Trustee contends that the separate classification of the non-dischargeable unsecured student loan debt from the other dischargeable unsecured debts, and proposal to pay the student loan creditors directly at the contract rate, while only making partial payment on the other dischargeable unsecured debts through the Trustee, unfairly discriminates in favor of the student loan creditors and against the other unsecured creditors.

In response to the Objection, Debtor argues that such classification is permissible under § 1322(b)(5), and that § 1322(b)(1) is not applicable to § 1322(b)(5). Alternatively, Debtor contends that, while such classification discriminates, the discrimination is not "unfair" under § 1322(b)(1). No creditors objected to confirmation.

---

[4] Note the difference between the amount of unsecured debt listed in the debtor's schedules ($68,333.52) compared to the actual amount of claims. The claims bar date has passed. Thus, the amount of claims, rather than the amount in the schedules, controls.

[5] ($11,986/$51,057.30)*100 = 23%. This differs slightly from the 17% Trustee stated at the hearing. The Court was unable to replicate the Trustee's exact calculation.

II.

ANALYSIS

This case presents the following issues: (1) whether classification of student loan obligations as long-term debt under § 1322(b)(5) is subject to the unfair discrimination limitations of § 1322(b)(1), and, if so, (2) whether the discriminatory treatment proposed in Debtor's Plan is "unfair."

**A. Must a long-term debt classified under § 1322(b)(5) also comply with § 1322(b)(1)'s prohibition of unfair discrimination?**

This is purely a question of law. Section 1322(b) provides, in pertinent part, that the plan may:

> (1) designate a class or classes of unsecured claims...but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.
> . . . .
> (5) notwithstanding paragraph (2) of this subsection,[6] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b).

It is undisputed that (1) the final payments on each of Debtor's student loans come due after the final plan payment is scheduled to be made, and (2) the student loans qualify for treatment as long-term debt under § 1322(b)(5). Classification under § 1322(b)(5) permits the debtor to cure any defaults and

---

[6] Paragraph (2) of subsection 1322(b) states that the plan may-- "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2).

maintain payments at the contract rate. Debtor is current on the student loan obligations, and thus seeks only to maintain the contractual payments over the life of the plan.

Debtor argues that a debt classified as long-term under § 1322(b)(5) need not comply with the strictures of § 1322(b)(1) because § 1322(b)(5) is a stand-alone provision -- which may be used by debtors in structuring chapter 13 plans without reference to § 1322(b)(1). Specifically, Debtor argues that the language of subsection (5), which begins: "notwithstanding paragraph (2)", should not be interpreted as requiring application of § 1322(b)(1) simply because paragraph (1) is not expressly excluded. Debtor maintains that the language excluding paragraph (2) from application to paragraph (5) specifically refers to the prohibition on altering the terms of a claim secured by a debtor's residence,[7] and should not be construed as imposing any other limitations on the use of § 1322(b)(5), by implication or otherwise.

Debtor also asserts that a strong public policy exists in favor of education, which justifies the disparate treatment of student loan debt urged by Debtor. The proposed treatment would enable Debtor to emerge from bankruptcy with a "fresh start." Debtor's bottom-line contention is that any debt classified as long-term under § 1322(b)(5) may be paid in full at the contract rate during the life of the plan and that § 1322(b)(1) precluding unfair discrimination is simply inapplicable. Therefore, according to Debtor, no analysis of the discrimination imposed on other unsecured nonpriority creditors by such classification is

---

[7] Section 1322(b)(5) is traditionally used by debtors to decelerate, cure and maintain payments on defaulted mortgages. In re Colley, 260 B.R. 532, 535 (Bankr. M.D. Fla. 2000).

MEMORANDUM DECISION
SUSTAINING OBJECTION TO CONFIRMATION


Case: 05-58969   Doc# 22   Filed: 10/17/06   Entered: 10/17/06 14:57:08   Page 5 of 14

appropriate.

There is some case support for Debtor's arguments. A few courts have permitted discriminatory treatment of the kind Debtor seeks to impose in this case. <u>In re Foreman</u>, 136 B.R. 532 (Bankr. S.D. Iowa 1992)(confirming plan separately classifying student loans and providing for payment of student loan debts concurrently with secured debts and prior to repayment of other unsecured debts); <u>In re Dodds</u>, 140 B.R. 542 (Bankr. D. Mont. 1992)(confirming chapter 13 plan providing for payment of student loans at contract rate while paying approximately 79% on other unsecured claims); <u>In re Benner</u>, 156 B.R. 631 (Bankr. D. Minn. 1993)(permitting debtor to pay 57% on student loans during plan and only 5% to other general unsecured creditors); <u>In re Cox</u>, 186 B.R. 744 (Bankr. N.D. Fla. 1995)(allowing payment of 42.3% on student loans and only 18% on other nonpriority unsecured claims); <u>In re Chandler</u>, 210 B.R. 898 (Bankr. D. N.H. 1997)(confirming plan which paid 9.5% to unsecured creditors, while Debtor paid 56.9% of student loan debt outside plan). However, even these cases purport to apply § 1322(b)(1) and instead hold that, as a matter of law, compliance with § 1322(b)(5) passes unfair discrimination scrutiny. <u>See Labib-Kiyarash v. McDonald (In re Labib-Kiyarash)</u>, 271 B.R. 189, 194 (B.A.P. 9th Cir. 2001) (citing <u>Cox</u>, 186 B.R. at 746-747). The Court is unaware of any case which stands squarely for the proposition that a Debtor may freely discriminate against other unsecured creditors simply by classifying a student loan as long-term debt under § 1322(b)(5).[8]

---

[8] The bankruptcy court in <u>In re Christophe</u>, 151 B.R. 473, 480 (Bankr. N.D. Ill. 1993), stated in dicta that the debtor could classify student loans pursuant to 1322(b)(5) and pay them in full while providing only 32% to other unsecured creditors without

MEMORANDUM DECISION
SUSTAINING OBJECTION TO CONFIRMATION

6

Case: 05-58969   Doc# 22   Filed: 10/17/06   Entered: 10/17/06 14:57:08   Page 6 of 14

While none of these cases expressly holds § 1322(b)(5) inapplicable, in light of their lack of analysis of the discrimination between creditors,[9] that is their practical effect.

Debtor's argument -- that the exclusion of paragraph (2) but not paragraph (1) from the ambit of 1322(b)(5) should not be read to support application of paragraph (b)(1) -- has been thoroughly discussed in previous cases. In light of the doctrine of <u>inclusio unius exclusio alterius</u> and the fact that Congress made an explicit exception in 1322(b)(1) for co-signed consumer loans, the Court concludes that if Congress had wished to exclude student loans from scrutiny under 1322(b)(1) it would have expressly done so. See <u>Colley</u>, 260 B.R. at 537; <u>Chandler</u>, 210 B.R. at 903.

Debtor's public policy argument has two components. One is that the public policy in favor of education supports permitting Debtor to discriminate to the benefit of the student loan creditors. The other is Debtor's "fresh start" argument. Analysis of any public policy argument must be performed in the context of the statutory scheme. As one bankruptcy court explained:

> Reliance on idealized notions of "fresh start," divorced from the very statute that provides that fresh start, is inappropriate. Congress has created, defined and limited the fresh start through, <u>inter alia</u>, the Code's discharge provisions. Surely, the bankruptcy laws do effect a fresh start policy. But the same laws significantly limit the fresh start's scope.

<u>In re Colfer</u>, 159 B.R. 602, 609-610 (Bankr. D. Me. 1993).

Debtor is certainly correct that there is a strong public policy favoring education. Whatever the strength of that policy,

violating 1322(b)(1).

---

[9] As explained below, <u>infra</u> at 10:2-28, with the exception of <u>Benner</u>, no other cases attempted such an analysis.

however, Congress has specifically made student loan debts non-dischargeable by enacting § 523(a)(8), and has not specifically elevated student loan debts in the priority scheme. On the other side of the coin are the foundational bankruptcy principles of equal treatment of creditors and strict prioritization of claims. The public policy arguments Debtor invokes, while somewhat compelling, have not persuaded other courts. See Chandler, 210 B.R. at 902 (Bankr. D. N.H. 1997); Colfer, 159 B.R. at 609-610; In re Gonzalez, 206 B.R. 239, 240-241 (Bankr. S.D. Fla. 1997). This Court is similarly unconvinced.

In addition, some courts have asserted that classification of the type Debtor proposes, if permitted, would produce anomalous results.[10] In re Coonce, 213 B.R. 344 (Bankr. S.D. Ill. 1997); In re Belda, 315 B.R. 477, 484 (N.D. Ill. 2004). The Court agrees.

While the Ninth Circuit Court of Appeals has not confronted this issue, the Ninth Circuit BAP has concluded that a debt classified as long-term under § 1322(b)(5) must not run afoul of the prohibition on unfair discrimination under § 1322(b)(1). Labib-Kiyarash, 271 B.R. at 195; McDonald v. Sperna (In re Sperna), 173 B.R. 654 (B.A.P. 9th Cir. 1994). This is consistent with the majority approach. See, e.g., Groves v. LaBarge (In re Groves), 39 F.3d 212 (8th Cir. 1994); Belda, 315 B.R. 477; In re Edwards, 263 B.R. 690 (Bankr. D. R.I. 2001); Colley, 260 B.R. 532; In re

---

[10] "For example, a student loan, with thirty-six monthly payments remaining could not qualify under § 1322(b)(5) and, therefore, would have to be classed with all of the other unsecured creditors. However, an identical obligation with thirty-seven monthly payments remaining would be entitled to full payment under the plan without any iniquity as to whether the proposed treatment was fair." Coonce, 213 B.R. at 348.

MEMORANDUM DECISION
SUSTAINING OBJECTION TO CONFIRMATION

8

Thibodeau, 248 B.R. 699 (Bankr. D. Mass. 2000); Coonce, 213 B.R. 344; In re Sullivan, 195 B.R. 649 (Bankr. W.D. Tex. 1996); Colfer, 159 B.R. 602. Accordingly, the Court answers the first question in the affirmative, and holds that a long-term debt classified under § 1322(b)(5) must also satisfy the prohibition against unfair discrimination of § 1322(b)(1).

**B.  Is the discriminatory treatment proposed in Debtor's Plan "unfair" such that the Plan may not be confirmed?**

The determination whether a proposed classification unfairly discriminates is within the discretion of the bankruptcy judge. In re Crawford, 324 F.3d 539, 542 (7th Cir. 2003); Groves, 39 F.3d at 214; In re Williams, 253 B.R. 220, 226 (Bankr. W.D. Tenn. 2000); Dodds, 140 B.R. at 544. To determine whether discrimination is "unfair" under § 1322(b)(1), the courts in this circuit apply the test enunciated in AMFAC Distribution Corp. v. Wolff (In re Wolff), 22 B.R. 510 (B.A.P. 9th Cir. 1982). Labib-Kiyarash, 271 B.R. at 195. The burden is on the debtor to show that the proposed classification does not unfairly discriminate against other unsecured creditors. Labib-Kiyarash, 271 B.R. at 195. To satisfy the Wolff test: (1) the discriminatory treatment must have a reasonable basis; (2) the debtor must be unable to carry out a plan without the discriminatory treatment; (3) the discrimination must be proposed in good faith; and (4) the degree of discrimination must be directly related to the basis or rationale for the discrimination. Wolff, 22 B.R. at 512.

Debtor contends that the discriminatory treatment proposed in this case -- payment of approximately 39% to student loan creditors during the Plan term, and 6% on other general unsecured claims --

does not unfairly discriminate within the meaning of § 1322(b)(1). Most of the cases that support this argument do not conduct any analysis of the discriminatory treatment to determine whether or not it is unfair, and thus are unhelpful. See, for example, Chandler, 210 B.R. at 903-904 (purporting to apply both 1322(b)(1) and 1322(b)(5), but simply approving of debtor's proposed classification of student loans under 1322(b)(5) without analyzing or determining fairness); Cox, 186 B.R. at 747 (stating that an analysis of fairness was unnecessary because 1322(b)(5) "prevents a finding of unfair discrimination in this case as a matter of law," despite the court's insistence that 1322(b)(1) applied). The Benner court, although technically in agreement with Chandler and Cox, did conduct an inquiry into the fairness of the discrimination. Applying the Eighth Circuit's test for unfair discrimination, which is identical to the Wolff test, set forth in Mickelson v. Leser (In re Leser) 939 F.2d 669 (8th Cir. 1991), the bankruptcy court found that the proposed discrimination was not unfair. However, in conducting its analysis, that court found that the first factor in the Leser test (that the basis for discrimination be reasonable) was satisfied because the student loan debt was not dischargeable and the debtor desired to obtain a fresh start at the end of the chapter 13 case. Benner, 156 B.R. at 634. This is contrary to the conclusion reached by the majority of courts -- i.e., that the non-dischargeability of student loans, by itself, is insufficient to justify different treatment. Groves, 39 F.3d at 216; Labib-Kiyarash, 271 B.R. at 195-196; Sperna, 173 B.R. at 658; Cox, 186 B.R. at 746; In re Saulter, 133 B.R. 148, 149-150 (Bankr. W.D. Mo. 1991)

Accordingly, there are effectively no published opinions holding that a proposed discrimination in favor of student loans classified under § 1322(b)(5) is, ipse dixit, "fair" under § 1322(b)(1).[11]

Applying the Wolff factors to this case, it is impossible for the Court to conclude that Debtor's Plan passes the test, given the current state of the record. Neither party has submitted a declaration in support of its position, and no testimony was offered at the hearing on this matter. Accordingly, the Court is unable to analyze the Wolff factors. It is the Debtor's burden to prove that the proposed classification does not unfairly discriminate against other unsecured creditors. Labib-Kiyarash, 271 B.R. at 195. This burden has not been met.

The Court notes the widespread criticism of the efficacy of the Wolff test in this context. See Bentley v. Boyajian (In re Bentley), 266 B.R. 229, 238 (B.A.P. 1st Cir. 2001); McCullough v. Brown (In re Brown), 162 B.R. 506, 509-515 (N.D. Ill. 1993); Colfer, 159 B.R. at 607-608. Attempts have been made to develop a more meaningful test for determining whether discrimination among similar creditors is fair under 1322(b)(1). See In re Brown, 152 B.R. 232, 238 (Bankr. N.D. Ill. 1993), rev'd, 162 B.R. 506 (N.D.

---

[11] Chandler cited numerous cases for the proposition that 1322(b)(5) may be used to justify treating student loan creditors differently from other general nonpriority unsecured creditors. Chandler, 210 B.R. at 904. This included Cox, Benner, Saulter, In re Anderson, 173 B.R. 226 (Bankr. D. Colo. 1993), and In re McKinney, 118 B.R. 968 (S.D. Ohio 1990). The Saulter and Anderson courts both denied plan confirmation on the grounds that the proposed treatment constituted unfair discrimination. The McKinney case was filed prior to the amendments to the Code which made student loan debt non-dischargeable.

MEMORANDUM DECISION
SUSTAINING OBJECTION TO CONFIRMATION

11

Case: 05-58969   Doc# 22   Filed: 10/17/06   Entered: 10/17/06 14:57:08   Page 11 of 14

Ill. 1993)(proposing a test inquiring into whether the discrimination furthers a legitimate interest of the debtor); <u>In re Chapman</u>, 146 B.R. 411, 419 (Bankr. N.D. Ill. 1992)(examining whether discrimination provides offsetting benefit to those creditors subject to the discrimination); <u>Colfer</u>, 159 B.R. at 608-611 (proposing an analysis of the merits of the discrimination "undertaken in light of the impact of the discrimination on Congress' chosen statutory definition of the legitimate interests and expectations of the parties-in-interest to Chapter 13 proceedings"). None of these alternatives to the <u>Wolff</u> test has gained significant momentum. <u>See</u> <u>In re Etheridge</u>, 297 B.R. 810, 815-816 (Bankr. M.D. Ala. 2003) (setting forth the different tests for determining fairness and declining to adopt any single one, stating that the determination should be made on a case-by-case basis).[12]

## CONCLUSION

Although Debtor's Plan is not unconfirmable as a matter of law, it may not be confirmed on the current record. The discriminatory treatment proposed in the Plan could potentially be deemed fair under 1322(b)(1) if the specific facts of this case satisfied the <u>Wolff</u> test.

Due to the insufficient record before the Court, Trustee's

---

[12] The Debtor has not suggested that the Court adopt any of the alternatives to the <u>Wolff</u> test. Given the incomplete factual record before the Court, it is unnecessary for the Court to decide whether <u>Wolff</u> continues to provide the appropriate test of fairness for the purposes of 1322(b)(1), and it declines to do so at this time. Should the Debtor choose to supplement the record sufficiently to argue that this Plan satisfies the fairness inquiry under 1322(b)(1), the Court will then revisit the question of <u>Wolff</u>'s viability.

MEMORANDUM DECISION
SUSTAINING OBJECTION TO CONFIRMATION

12

Objection is sustained, and confirmation of Debtor's Plan is denied without prejudice.  The Trustee shall submit a form of order so providing, after review by Debtor's counsel as to form.

Dated: 10/17/06

ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

MEMORANDUM DECISION
SUSTAINING OBJECTION TO CONFIRMATION

13

Court Service List

Cathleen Cooper Moran, Esq.
Moran Law Group, Inc.
1674 N Shoreline Blvd. #140
Mountain View, CA 94043-1375

Eva Alexandra Delateur, Esq.
Office of the Chapter 13 Trustee
P.O. Box 50013
San Jose, CA 95150

Office of the U.S. Trustee
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004